# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHNNY SWANK** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-0937** |
| **MEDICAL DIRECTOR, DR. CASEY MCVEA** | **SECTION: "B" (4)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(1)(B) and (C), § 1915(e)(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

## I. Factual Background

### A. The Complaint

The Plaintiff, Johnny Swank ("Swank") is a prisoner currently housed at the B.B. "Sixty" Rayburn Correctional Center ("RCC"). He filed this *pro se* and *in forma pauperis* complaint against Dr. Casey McVea ("Dr. McVea"), Medical Director at RCC.

Swank alleges that since 2004 he has made "numerous sick calls and has had doctors visits to have something done about the blood clots in his legs", particularly his left hip to his left foot.[1]

---

[1] Rec. Doc. 1, p.7.

Swank claims that the inconsistencies of the medical department have resulted in little or no circulation in his lower left extremities and that his little toe is now purple.[2] Swank contends that the problem could have been resolved by having an angioplasty.[3] Swank further contends that the prison has an "obligation to provide proper medical care for those whom it is punishing by incarceration."[4]

As relief, Swank seeks monetary damages in the amount of $20,000,000.00 for pain and suffering, and an additional $500,000.00 in punitive damages.[5]

### B.     *The Spears Hearing*

On August 6, 2012, the undersigned conducted a *Spears hearing*. During the hearing, Swank testified that between the years of 1996 and 1997, he underwent an angioplasty, where he had two (2) stents put into his legs and had thirty-seven (37) blood clots removed. Swank stated that although the doctors at the hospital removed the blood clots, they had informed him that these blood clots would return. Swank testified that he once again began to notice a loss of circulation in his left leg beginning in 2002.

Swank further testified that on September 23, 2011, Dr. LaRavia, former Medical Director at RCC, ordered an MRI and X-ray scan for Swank. Swank stated that after the test results came in, he noticed a black spot near his right kidney. Swank stated that he asked Dr. LaRavia if the black spot could be an indication of cancer, and in response, Dr. LaRavia told him not to jump to

---

[2]*Id.*

[3]*Id.*

[4]*Id.*

[5]Rec. Doc. 1, p. 8.

2

conclusions and sent him to get an ultrasound in November 2011. During the ultrasound, the doctors found a blockage in Swank's left leg due to blood clots. Swank testified that although Dr. LaRavia knew about the blood clots, he did nothing to treat it, which lead to Swank's worsening condition. Swank further stated that Dr. LaRavia left his position sometime in May 2012 and at that time, Dr. McVea became the new Medical Director at RCC.

Swank testified that in May 2012, he once again underwent testing. However he stated that after this procedure, the doctors had told him that everything was normal. Swank alleges that everything cannot be normal if he can barely walk.

Swank further testified that he had seen Dr. McVea once after undergoing the testing in May. At that time, Dr. McVea proscribed him with water pills, but had said nothing about the tests. Swank alleges that when he asked Dr. McVea why he had prescribed him with water pills, Dr. McVea simply responded by saying, "because you need them." Swank contends that this was an insufficient answer.

Swank testified that although Dr. McVea "seems like he is willing to work with people," he has not yet responded to his request to see him in June. Furthermore, Swank argues that Dr. McVea never provided him with any information or medication regarding his blood clots. Swank conceded that he had not filed an Administrative Remedy Procedure ("ARP") or done anything else to follow up with McVea. He stated that he has not pushed this issue primarily because he did not want to cause trouble by filing too many ARPs. Additionally, Swank stated that other than Dr. McVea, there is currently no one else to provide him with medical care at RCC.

Swank further testified that Bessie Carter, Director of Nursing, is generally indifferent. He testified that she shrugs her shoulders, does not answer questions, is smart mouthed, and tells him

to do as he is told.

## II. Standards of Review

Title 28 U.S.C. §§ 1915(e)(2), 1915A, and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss complaints filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under these statutes, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998); *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *See Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

## III. Analysis

### A. Dr. Casey McVea

Swank named Dr. McVea, Medical Director at RCC, as the only defendant in this complaint.

4

Swank alleges that despite his request to see Dr. McVea in June 2012, he has yet to see him. Additionally, Swanks argues that since undergoing testing in May 2012, Dr. McVea has yet to provided him with information or treatment for the blood clots in his left leg. As a result, Swank contends that he was denied adequate medical care.

Inadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to the prisoner's serious medical needs which constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Stewart v. Murphy* 174 F.3d 530, 533 (5th Cir. 1999) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999).

Under the "deliberate indifference" standard, a prison official is not liable for the denial of medical treatment "unless the official knows of and disregards and excessive risk to inmate health or safety." *Stewart*, 174 F.3d at 534 (citing *Farmer*, 511 U.S. at 837). While malpractice and negligent treatment do not rise to the level of a constitutional tort, *see Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993), a claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can state a claim of a constitutional tort. *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle,* 429 U.S. at 105-106).

In *Estelle*, the Supreme Court concluded that:

> deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle,* 429 U.S. at 97 (citation omitted, footnotes omitted). To state an Eighth Amendment claim,

5

a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," *Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457, 1460 (5th Cir. 1983), and that a prison official knew of and disregarded "an excessive risk to inmate health or safety." *Stewart*, 174 F.3d at 533 (*quoting Farmer*, 511 U.S. at 837).

For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (*quoting Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves,* 27 F.3d at 176 (citing *Farmer*, 511 U.S. at 842 & n.8).

In the instant matter, Swank generally contends that his visits with Dr. McVea are inconsistent and that Dr. McVea is non-responsive. He complains that despite his request to see him in June 2012, he has not yet seen Dr. McVea. Additionally, Swank contends that Dr. McVea has failed to provide him with information regarding the tests he underwent in May 2012 or information regarding the blood clots in his leg.

Nevertheless, Swank has not established that there was deliberate indifference to his serious medical needs. In fact, Swank only filed one request to see Dr. McVea in June 2012 and he has failed to file an ARP. Furthermore, although Swank alleges that his treatment has been inconsistent and that he is generally kept uninformed, he apparently did receive treatment and care.[6] Swank merely disagrees with the amount of medical treatment and care he has received.

---

[6]Rec. Doc. 1, pp. 11-15.

However, a mere disagreement with medical treatment provided does not state a claim for Eighth Amendment indifference to medical needs. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). While inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, malpractice and negligent care do not reach that level. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983.") (emphasis added); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

Accordingly, Swank's claims against Dr. McVea do not rise to the level of a constitutional violation and therefore, should be dismissed with prejudice as frivolous pursuant to 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e, and for otherwise failing to state a claim upon which relief can be granted.

## IV. Recommendation

It is therefore **RECOMMENDED** that Swank's § 1983 claims against Dr. Casey McVea be **DISMISSED WITH PREJUDICE** as frivolous pursuant to 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e, and for otherwise failing to state a claim upon which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

7

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[7]

        New Orleans, Louisiana, this 20th day of August, 2012.

        **KAREN WELLS ROBY**
        **UNITED STATES MAGISTRATE JUDGE**

---

[7]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.